IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

APR 0 6 2007

GREGORY C. LANGHAM
CLERK

Civil Action No. 05-cv-0767-RPM-MEH

HEALTH GRADES, INC.,

    Plaintiff/Counterdefendant, a Delaware Corporation doing business in Colorado,

    v.

SUSAN L. PROWS,

    Defendant/Counterclaimant, a citizen and resident of the State of Oregon,

---

## ~~PROPOSED~~ FINAL PRETRIAL ORDER

---

## 1. DATES AND APPEARANCES

    The Final Pre-Trial Conference in this matter is scheduled for Friday April 6, 2007, at 10:00 a.m.  Appearing for the parties will be: Daniel R. Satriana, Jr. of Clisham, Satriana & Biscan L.L.C. and ~~Kris J. Kostolansky of Rothgerber, Johnson and Lyons,~~ on behalf of Plaintiff and Diane S. King of King & Greisen, L.L.P., on behalf of Defendant.

## 2. JURISDICTION

    Jurisdiction is founded upon diversity of citizenship pursuant to 28 U.S.C. §1332, as Plaintiff is a Delaware corporation with its principal offices in the State of Colorado and Defendant is a resident and domiciliary of Oregon.

## 3. CLAIMS AND DEFENSES

    a.    Plaintiff's Claim and Defenses to Counterclaims::

Defendant/Counterclaimant Susan Prows ("Prows") is a former employee of Plaintiff Health Grades, Inc. ("Health Grades"). Prows was employed by Health Grades for less than two months and was a clear "at will" employee based upon various docum.      at Prows signed. This civil action arises from the termination of Prows' employment w.      'ealth Grades on February 25, 2005.

In the fall of 2004, Health Grades began negotiations with the Foundation for Accountability ("FACCT"), a Massachusetts non-profit corporation, regarding the acquisition by Health Grades of FACCT's web-based interactive consumer tool called *Compare Your Care*™" ("CYC Tool"). On or about January 21, 2005, Health Grades and FACCT entered into an Asset Purchase Agreement whereby Health Grades acquired specific assets of FACCT including various items of intellectual property owned by or licensed to FACCT and licenses for use of various surveys and tools that FACCT utilized in its business. These assets were owned by or licensed to FACCT, to which FACCT attested and warranted as part of the asset acquisition and that these assets would be transferred to Health Grades as part of the acquisition. Prows had no ownership or use right or interest in any of these assets.

John Morrow ("Morrow"), Health Grades' Vice President of Strategic Development and Acquisitions, met with Prows and others during the course of the negotiations of the acquisition. Morrow worked with Prows and other FACCT employees in connection with the work that led to the consummation of the Asset Purchase Agreement in January 2005. During this period of time, neither Prows nor any of the other persons who were performing this work were employees of Health Grades. On or about January 24, 2005, Health Grades made an offer of employment to Prows which she accepted on February 4, 2005. The terms and conditions of Health Grades' offer of employment to Prows are not subject to dispute. They are contained in a one-page

document signed by Prows on February 4, 2005 and faxed by her, without comment, to Morrow on that date.   During her employment Prows made requests with respect to a change of her title and an increase in her vacation time.   She said nothing whatsoever about the at-will nature of her employment with Health Grades.

Prows' termination resulted from events that occurred at a February 25, 2005 meeting that was held at Health Grades' Golden, Colorado offices.   Present at that meeting were, among others, Prows and Health Grades' Senior Vice President of Finance/Chief Financial Officer, Allen Dodge ("Dodge").   In the course of that meeting, Prows was asked whether she knew of other entities to which Health Grades could market its products.   Prows stated that she was aware of a large healthcare plan but refused to disclose the identity of the healthcare plan entity until the terms of an incentive compensation plan were first agreed upon.   Dodge told Prows that refusal to provide such information was inappropriate given her employment with the company. Prows refused to provide the information.   Following that meeting, and based on Prows' refusal to provide the requested information, Health Grades determined that Prows' employment should be terminated immediately.   Prows was informed of her immediate termination shortly after that meeting.

Prows' termination had nothing whatsoever to do with the completion of the licensing agreement for the so-called Seattle Angina Questionnaire ("SAQ").   Both Prows and Kim Meyers ("Meyers"), another Health Grades employee (who had been employed previously by FACCT), were working on that project.   Prows had prepared a final draft of the licensing agreement on January 28, 2005.   The licensing agreement was made on February 28, 2005, approved on March 2, 2005 and activated on April 4, 2005.

Subsequent to her termination, Prows retained Oregon counsel who corresponded with Health Grades and its counsel regarding issues relating to the termination of her employment. On March 18, 2005, Health Grades commenced a declaratory judgment action in Denver District Court, requesting a declaration that Prows was an at-will employee and that her termination was consistent with her at-will status. In response to Health Grades' declaratory judgment action, on May 6, 2005, Prows removed that civil action to this Court and brought counterclaims of public policy wrongful discharge, fraudulent misrepresentation, negligent misrepresentation, quantum meruit, and abuse of process against Health Grades. On June 23, 2006, the parties filed a stipulated motion whereby Prows sought to voluntarily dismiss her fraudulent misrepresentation and abuse of process counterclaims with prejudice, which motion was granted by this Court.

Health Grades denies each of Defendant/Counterclaimant's allegations and states that Prows was an at-will employee and that her employment was terminated for legitimate business reasons as described above.

    b.    <u>Defendant's Defenses and Counterclaims:</u>

Susan Prows' has never contested that she was an at-will employee. However, as set forth below, she strongly disputes that her termination was legal.

Prior to becoming employed by Plaintiff, Susan Prows worked for three years as the Senior Research Director of a company called FACCT. In the fall of 2004, John Morrow, the Sr. Vice President of Acquisitions for Health Grades, met with Prows and other members of the "CYC Team" regarding Health Grades' possible acquisition of CYC tools and technology. In addition to the services of the three members of the CYC team, FACCT's board of directors ultimately agreed to sell CYC to Health Grades, Inc.

John Morrow asked Prows and two other CYC team members to assist Health Grades during the transition process with the expectations that they would be joining Health Grades on a full-time basis at the end of the transition period.   In reliance upon Morrow's representations regarding future employment, Susan Prows performed a substantial amount of work for Health Grades in the fall of 2004.   For instance, Susan Prows transferred CYC's intellectual property elements to Health Grades, oversaw the transfer of current CYC client contracts and subcontracts from FACCT to Health Grades, developed a power point presentation for Health Grades, and she and the other members of the CYC team continued to work on a daily basis and without compensation on ongoing CYC projects, including the finalization of the new CYC Osteoarthritis tool developed for the National Arthritis Foundation and research on the Johns Hopkins University CYC Schizophrenia tool.   Susan Prows was not compensated for this work.

On December 14, 2004, the Company made a written offer of employment to Susan Prows of $110,000/year plus health and medical benefits, stock options, and an incentive compensation plan.   In reliance upon this offer, Susan Prows stopped pursuing other job opportunities.

However, having "mined" Susan Prows' knowledge, talents and rolodex for months, Health Grades then failed to follow through on its promises regarding her employment relationship.   Throughout January and February of 2005, Susan Prows repeatedly requested confirmation regarding the terms of her incentive compensation plan.  Her requests for information were ignored.   Health Grades has since taken the position that Susan Prows was only offered the potential for an incentive compensation plan.

Under these facts, Health Grades' recruitment of Susan Prows gives rise to a claim for negligent misrepresentation, as well as a claim for *quantum meruit* for the unpaid services provided throughout the late fall of 2004.

The Company then compounded its legal error by choosing to fire Susan Prows after she repeatedly asked the Company to clarify (and comply with) the contractual terms and conditions of her compensation' and immediately upon her complaint regarding copyright violations.   On February 24, 2005, Susan Prows told her new supervisor, Janet Burkhard, that she was concerned that the company was currently licensing the CYC Tool that contained the SAQ to a client in Minnesota (HealthFront, Inc.) but Health Grades had not yet acquired the intellectual property rights to that product.  She reiterated this concern to Chief Financial Officer Allen Dodge on February 25th.  Dodge was visibly angered by Susan Prows' complaint. She was abruptly fired "for cause" approximately two hours later.  This discharge gives rise to a public policy wrongful discharge claim.

## 4.  STIPULATIONS

1.      Health Grades is a Delaware corporation.

2.      Health Grades is a company that provides valuable healthcare information to consumers, employers, insurers and others interested in the quality of healthcare in this country. Health Grades analyzes data from numerous government sources and rates hospitals with respect to various surgical and other procedures.  Health Grades also assembles information regarding physicians in "Physician Quality Reports" that are offered for sale to the public on Health Grades' website.  Health Grades employs over 80 employees at is office in Golden, Colorado.

3.      Prows is a former employee of Health Grades who resides in Portland, Oregon.

4.      At some point in late 2004 or early 2005, Health Grades acquired the assets of a Massachusetts non-profit corporation, Foundation for Accountability ("FACCT"). A portion of FACCT's assets included web-based interactive consumer tools called *Compare your Care* TM("CYC"). Prows is, and at all relevant times hereto was, familiar with the CYC technology.

5.      In the fall of 2004, John Morrow, Health Grades then Vice President of Strategic Development and Acquisitions met with Prows and others.

6.      On or about January 21, 2005, FACCT and Health Grades entered into an Asset Purchase Agreement.

7.      On or about January 24, 2005, Health Grades made a written offer of employment to Prows which Prows accepted in writing on or about February 4, 2005.

8.      Prows was enrolled in Health Grades' health insurance plan for the month of January 2005.

9.      Prows signed an offer letter accepting employment at Health Grades on February 4, 2005, though Prows performed work for Health Grades for which she received compensation commencing around January 1, 2005.

10.      During the month of January 2005, Prows made two business trips to Colorado to conduct work for Health Grades for which she was paid by Health Grades.

11.      On February 25, 2005, Prows made a third business trip to Colorado to conduct work for Health Grades. During each of the three business trips made to Colorado, Prows worked with Health Grades employees and managers in connection with Health Grades' business, the CYC tool and received compensation benefits.

12.      Prows initiated telephonic and electronic communications with Colorado-based employees.

7

13. Prows' employment with Health Grades was terminated at Health Grades' former offices in Lakewood, Colorado.

14. Prows is subject to *in personam* jurisdiction in the state of Colorado and venue is proper in this judicial district.

14. Since the termination of her employment, Prows, has retained counsel who has requested documentation concerning the termination of her employment and other disciplinary action brought against her. Prows, through counsel has also requested statements of policy and other documents which provide a basis for the termination of her employment. Prows, through counsel, has also alleged that she is very upset by the manner in which her employment was abruptly terminated.

15. There is a dispute regarding the legality of Plaintiff's termination of her employment.

16. On April 11, 2002, Prows signed an employment offer letter accepting employment with FACCT.

17. Subsequent to October 2004, Prows' status with FACCT changed from employee to independent contractor.

18. Prows signed an Independent Contractor Agreement with FACCT pursuant to which she agreed to be responsible for, among other things, "[w]orking with [FACCT] Executive Director and CYC team to respond to due diligence requests from potential CYC acquirers."

19. Prows was an "at will" employee of Health Grades.

### 5. PENDING MOTIONS

There are no pending motions.

### 6. WITNESSES

a.    **Non-expert witnesses to be called by each party.**

(1-a)   Plaintiff/Counterdefendant states the following non-expert witnesses will testify in person at the trial of this matter:

See Exhibit A attached to this Order.

(2-a)   Plaintiff/Counterdefendant states the following non-expert witnesses may testify in person at the trial of this matter:

See Exhibit A attached to this Order.

(3-a)   Plaintiff/Counterdefendant states the following non-expert witnesses will testify by deposition at the trial of this matter:

See Exhibit A attached to this Order.

(1-b)   Defendant states the following non-expert witnesses will testify in person at the trial of this matter:

See Exhibit B attached to this Order.

(2-b)   Defendant/Counterclaimant  states the following non-expert witnesses may testify in person at the trial of this matter:

See Exhibit B attached to this Order.

(3-b)   Defendant/Counterclaimant states the following non-expert witnesses will testify by deposition at the trial of this matter:

See Exhibit B attached to this Order.

b.    **Expert witnesses**

(1-a)   Plaintiff/Counterdefendant states the following expert witnesses will testify at the trial of this matter:

See  Exhibit A attached to this Order

(1-b)   Defendant/Counterclaimant states the following expert witnesses will testify in person at the trial of this matter:

See Exhibit B attached to this Order.

(2-b)   Defendant/Counterclaimant states the following expert witnesses may testify in person at the trial of this matter:

See Exhibit B attached to this Order.

(3-b)   Defendant/Counterclaimant states the following expert witnesses will testify by deposition at the trial of this matter:

See Exhibit B attached to this Order.

## 7. EXHIBITS

(a)

(1)   Plaintiff/Counterdefendant states it will offer the following exhibits at the trial of this matter:

See Exhibit C attached to this Order.

(2)   Defendant/Counterclaimant states it will offer the following exhibits at the trial of this matter:

See Exhibit D attached to this Order.

(b)   Copies of listed exhibits must be provided to opposing counsel and any pro se party no later than five days after the final pretrial conference. The objections contemplated by Fed. R. Civ. P. 26 (a)(3) shall be filed with the clerk and served by hand delivery or facsimile no later than 11 days after the exhibits are provided.

## 8. DISCOVERY

Discovery has been completed.

## 9. SPECIAL ISSUES

None.

## 10. SETTLEMENT

a.      A settlement conference was held before Magistrate Judge Schlatter on September 29, 2005 at which time the parties met in good faith to discuss settlement of the case.

b.      Counsel for Plaintiff, Daniel R. Satriana, Jr. and Kris Kostolansky and Plaintiff's Senior Vice President of Finance/Chief Financial Officer Allen Dodge, as well as counsel for Defendant/Counterclaimant, Diane S. King and Julie Tolleson and Defendant/Counterclaimant appeared at the Settlement Conference.

c.      The parties have been promptly informed of all offers of settlement.

d.      Counsel for the parties intend to continue to discuss the possibilities of settlement of the case.

e.      It appears from the discussion between counsel that there is little possibility of settlement.

f.      There has been no additional settlement conference scheduled.

## 11. OFFER OF JUDGMENT

Counsel for the parties acknowledge familiarity with the provision of Rule 68 of the Federal Rules of Civil Procedure, and counsel have discussed it with their clients against whom claims are made in this case.

## 12. EFFECT OF FINAL PRETRIAL ORDER

Hereinafter, this Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the court of by order of the court to prevent manifest injustice.  The pleadings will be deemed merged herein.

11

This Final Pretrial Order supersedes the Scheduling Order.  In the event of ambiguity in any provision of this Final Pretrial Order, reference may be made to the records of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

### 13.  TRIAL AND ESTIMATED TIME

Counsel estimate that trial to jury of the claims and counterclaims in this matter will require five days.  Trial will be held at the United States District Court for the District of Colorado in Denver, Colorado.

DATED this _6_ day of April, 2007.

BY THE COURT:

_____

FINAL PRETRIAL ORDER SUBMITTED:


s/Daniel R. Satriana, Jr.                     s/Diane S. King
Daniel R. Satriana, Jr.                       Diane S. King
Clisham, Satriana & Biscan, L.L.C.            ~~Paula Greisen~~
1512 Larimer Street, Suite 400                King & Greisen, LLP
Denver, CO 80202                              1670 York Street
303-468-5402                                  Denver, CO 80206
303-942-7290 (fax)                            303-298-9878
                                              303-298-9879 (fax)

*Attorneys for Plaintiff*

                                   *Attorneys for Defendant/Counterclaimant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-0767-RPM-MEH

HEALTH GRADES, INC.,

    Plaintiff/Counterdefendant, a Delaware Corporation doing business in Colorado,

    v.

SUSAN L. PROWS,

    Defendant/Counterclaimant, a citizen and resident of the State of Oregon,

---

## EXHIBIT A TO PROPOSED FINAL PRETRIAL ORDER

---

**a. Non-Expert Witnesses**

    (1)    Plaintiff states that the following non-expert witnesses will testify in person at the trial of this matter:

    **Janet Burkhard**, c/o Health Grades, Inc. 500 Golden Ridge Road, Suite 100 Golden, CO 80401. Ms. Burkhard will testify regarding her duties and responsibilities with Health Grades, her interactions with Susan Prows and her interactions with Kim Meyers and Barbara Porter. Ms. Burkhard is expected to testify in person

    **Allen Dodge**, c/o Health Grades, Inc. 500 Golden Ridge Road, Suite 100 Golden, CO 80401. Mr. Dodge will testify regarding his duties and responsibilities with Health Grades, his interactions with Susan Prows, the nature of Prows' employment with Health Grades and the decision to terminate Prows' employment with Health Grades. Mr. Dodge is expected to testify in person.

**Kim Meyers,** c/o Health Grades, Inc. 500 Golden Ridge Road, Suite 100 Golden, CO 80401. Ms. Meyers will testify regarding her duties and responsibilities with Health Grades, her interactions with Susan Prows and her interactions with John Morrow and others at Health Grades prior to her employment with Health Grades. Ms. Meyers is expected to testify in person.

(2)    Plaintiff states that the following non-expert witnesses may testify in person at the trial of this matter:

**Sarah Loughran,** c/o Health Grades, Inc. 500 Golden Ridge Road, Suite 100 Golden, CO 80401. Ms. Loughran may testify regarding her duties and responsibilities with Health Grades and the termination of Susan Prows' employment with Health Grades. Ms. Loughran is expected to testify in person.

**Roland A. "John" Morrow,** 44 High Street Belfast, Maine 04915 207-338-0440. Mr. Morrow may testify regarding his duties and responsibilities with Health Grades, his involvement and participation in the negotiations between the Foundation for Accountability which led to the closing of an Asset Purchase Agreement between Health Grades and FACCT, and his interactions with Susan Prows, Kim Meyers and Barbara Porter related to that acquisition. Mr. Morrow is expected to testify in person.

**Caroline Petty,** c/o Health Grades, Inc. 500 Golden Ridge Road, Suite 100 Golden, CO 80401. Ms. Petty may testify regarding her duties and responsibilities with Health Grades and her interactions with Susan Prows. Ms. Petty is expected to testify in person.

**Barbara Porter,** 3626 River Road S., Salem, OR  97302. Ms. Porter may testify regarding her duties and responsibilities with Health Grades, her interactions with Susan Prows and her interactions with John Morrow and others at Health Grades prior to her employment with

2

Health Grades.   It has not yet been determined if Ms. Porter will testify in person or by deposition.

**Susan Prows,** c/o King & Greisen, LLP, 1670 York Street, Denver, CO  80216.  Ms. Prows may be called for examination regarding the factual basis for her counterclaims and defenses to Health Grades claim.  Ms. Prows is expected to testify in person.

Plaintiff/Counterdefendant requests that it be allowed to call any witnesses necessary for rebuttal or impeachment.

**b.**     **Expert witnesses**

Plaintiff will not call any expert witnesses at the trial of this matter.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 05-cv-00767-RPM-MEH

HEALTH GRADES, INC.,

     Plaintiff/Counterdefendant, a Delaware corporation doing business in Colorado,

v.

SUSAN L. PROWS,

     Defendant/Counterclaimant, a citizen and resident of the State of Oregon,

---

## EXHIBIT B : DEFENDANT/COUNTERCLAIMANT'S WITNESS LIST

---

**Witnesses who will testify at trial:**

1.   Susan A. Prows, 2131 N.E. Stanton Street, Portland, OR 97212.  Dr. Prows is the Defendant and Counterclaimant herein.   She will testify regarding all aspects of her counterclaims, defenses to HealthGrades' claims and her damages. Dr. Prows will testify in person.

2.   Ralph Prows, 2131 N.E. Stanton Street, Portland, OR 97212.  Dr. Prows is the husband of the Defendant/Counterclaimant herein and testify as to his knowledge regarding his wife's damages, including the availability of a position at Regence Blue Cross Blue Shield at the time that his wife accepted a position with HealthGrades, and conversations he had with HeathGrades' employees Kim Meyers and Barbara Porter.  Dr. Prows will testify in person.

3.   John Morrow, HealthGrades, last known address 500 Golden Ridge Road, Suite 100, Golden, CO 80401.  Morrow is a former Senior Vice President of HealthGrades.  He will testify regarding Dr. Prows' recruitment, promises made in connection therewith, and services Dr. Prows provided during the transition period.   He will also testify regarding Dr. Prows' efforts to secure licenses for the intellectual property being used by

HealthGrades, including the intellectual property owned by CVOutcomes, and other facts and circumstances related to this case. Mr. Morrow will testify in person or by deposition if unavailable in person at the time of trial.

4. Allen Dodge, 500 Golden Ridge Road, Suite 100, Golden, CO 80401. Mr. Dodge is the Chief Financial Officer of HealthGrades as well as the HealthGrades corporate compliance officer. He will testify regarding his knowledge of Prows' recruitment and hiring, Dr. Prows' efforts to finalize the terms of her compensation structure, and work she performed during the transition period between her employment with FACCT and HealthGrades. He will also testify Dr. Prows' efforts to secure permission for HealthGrades to use the intellectual property of CVOutcomes, complaints Dr. Prows made regarding possible copyright or intellectual property violations, the decision to fire Dr. Prows, related actions he took subsequent to her termination, and other facts and circumstances related to this case. Mr. Dodge will testify in person or by deposition if unavailable in person at the time of trial.

**Witnesses who may testify at trial:**

1. Kim Meyers, address unknown. Ms. Meyers is an Oregon based consultant with HealthGrades. She may testify regarding her knowledge of the uncompensated work Dr. Prows performed for HealthGrades, conversations regarding HealthGrades' incentive compensation, complaints Dr. Prows made regarding the illegal use of CVOutcomes' intellectual property, and other facts and circumstances related to this case. Ms. Meyers will testify in person or by deposition if unavailable in person at the time of trial.

2. Barbara Porter, address unknown. Ms. Porter is a consultant with HealthGrades and former Project Manager for FACCT. She may testify regarding her knowledge of the uncompensated work Dr. Prows performed for HealthGrades, conversations regarding HealthGrades' incentive compensation, complaints Dr. Prows made regarding the illegal use of CVOutcomes' intellectual property, and other facts and circumstances related to

this case. Ms. Porter will testify in person or by deposition if unavailable in person at the time of trial.

3. Janet Burkhard, 500 Golden Ridge Road, Suite 100, Golden, CO 80401. Ms. Burkhard is the Director of Product Development for HealthGrades. She may testify regarding her knowledge of HealthGrades' commitment to Dr. Prows' incentive compensation, Dr. Prows' efforts to finalize and secure her terms and conditions of her compensation structure, Dr. Prows' concerns regarding HealthGrades' illegal use of CVOutcomes' intellectual property and other facts and circumstances related to this case. Ms. Burkhard will testify in person or by deposition if unavailable in person at the time of trial.

4. Sarah Loughran, 500 Golden Ridge Road, Suite 100, Golden CO 80401. Ms. Loughran is the Executive Vice President of Provider Services for HealthGrades. She may testify regarding the events surrounding Dr. Prows' termination discussions regarding her compensation and other facts and circumstances related to this case. Ms. Loughran will testify in person or by deposition if she is not available to testify in person at the time of trial.

5. Caroline Petty, 500 Golden Ridge Road, Suite 100, Golden, CO 80401. Ms. Petty is the Payroll/Human Resources Coordinator for HealthGrades. She may testify regarding her knowledge of the commencement of Dr. Prows' employment, including HealthGrades' offering of incentive compensation, Dr. Prows' inquiries regarding same, the events surrounding Dr. Prows' termination, directions she was given regarding same and other facts and circumstances related to this case. Ms. Petty will testify in person or by deposition if she is not available to testify in person at the time of trial.

6. Barbara Schwartz, 500 Golden Ridge Road, Suite 100, Golden, CO 80401. Schwartz is the Assistant Controller for HealthGrades. She may testify regarding the February 25, 2005 meeting at which Prows raised both the issue of her compensation and

3

complained regarding possible copyright and/or intellectual property violations, and regarding Allen Dodge's response to same.   Ms. Schwartz will testify in person or by deposition if she is not available to testify in person at the time of trial.

7.   Peter Fatianow, last known address 500 Golden Ridge Road, Suite 100, Golden, CO 80401.   Fatianow is the former Senior Vice President of Corporate Services for HealthGrades. He may testify regarding his knowledge of Dr. Prows' inquiries regarding her compensation, HealthGrades' incentive compensation plans, and other facts and circumstances related to the case. Mr. Fatianow may testify in person.

8.   Kerry Hicks, 500 Golden Ridge Road, Suite 100, Golden, CO 80401.   Mr. Hicks is the CEO of HealthGrades.   Mr. Hicks may testify regarding his knowledge of the facts and circumstances surrounding HealthGrades' hiring of Dr. Prows, HealthGrades' incentive compensation plan, the termination of Dr. Prows' and other facts and circumstances related to this case. Mr. Hicks may testify in person or by deposition if he is not available to testify in person at the time of trial.

9.   Sunil K. Khanna, PhD. Oregon State University, Dept. of Anthropology, Waldo Hall, Corvallis, OR 97331.   Dr. Khanna may testify regarding the availability of an alternative job at the time that Dr. Prows was being recruited by HealthGrades, and other facts and circumstances related to this case. Dr. Khanna may testify in person.

10.   John Spertus, MD. Outcomes Instruments, LLC, 18 W. 52nd Street, Kansas City, MO 64112. Dr. Spertus is the President of CVOutcomes.   He may testify regarding his knowledge of Prows efforts to develop an acceptable license agreement for CVOutcomes intellectual property, that HealthGrades licensed that intellectual property to HealthFront (Minnesota) without permission, that HealthGrades continually failed to finalize the needed licensing agreement and other facts and circumstances related to this case. Dr. Spertus may testify in person.

4

11.   Stan Kaufman, PhD, CVOutcomes Instruments, LLC, 18 W. 52nd Street, Kansas City, MO 64112.   Kaufman is a research scientist with CVOutcomes.   He may testify regarding his knowledge of Prows efforts to develop an acceptable license agreement for CVOutcomes intellectual property, that HealthGrades licensed that intellectual property to HealthFront (Minnesota) without permission, that HealthGrades continually failed to finalize the needed licensing agreement and facts and circumstances related to this case. Dr. Kaufman may testify in person.

12.   Bradley Montgomery, Executive Director, HealthFront, 7900 International Drive, Suite 1080, Bloomington, MN 55425.  Mr. Montgomery may testify regarding HealthFront's use of the CVOutcomes' intellectual property, and other facts and circumstances related to this case.  Mr. Montgomery may testify in person.

13.  Witnesses listed by Plaintiff.

14.  Witnesses necessary for rebuttal or impeachment.

**Defendant/Counterclaimant's Expert Witness who Will Testify at Trial**:

Jane H. Lillydahl, Ph.D. 2150 Linden Drive, Boulder, CO 80304.  Dr. Lillydahl is an economist who will testify as to Plaintiffs= economic losses as a result of her termination from HealthGrades.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-0767-RPM-MEH

HEALTH GRADES, INC.,

    Plaintiff/Counterdefendant, a Delaware Corporation doing business in Colorado,

    v.

SUSAN L. PROWS,

    Defendant/Counterclaimant, a citizen and resident of the State of Oregon,

---

## EXHIBIT C TO PROPOSED FINAL PRETRIAL ORDER

---

Plaintiff/Counterdefendant may offer the following exhibit at the trial of this matter:

1. April 11, 2002 FACCT Employment Offer for Senior Program Director

2. October 2002 FACCT Business Plan

3. July 1, 2003 Lansky letter to Prows re lay-off and potential part-time employment

4. August 1, 2003 Lansky letter to Prows re change from full time to part time employment

5. October 1, 2004 Independent Contractor Agreement

6. November 12, 2004 Prows email to Morrow

7. December 6, 2004 Morrow email to Meyers etc re Status with Prows response

8. December 14, 2004 emails between Prows and Morrow

9. December 15-16, 2004 emails among Lemieux, Morrow, Prows etc re Permissions

10. December 20, 2004 Prows letter to Dr. Spertus

11. January 2005 Health Grades Employee Handbook

12.     January 1, 2005 Draft Incentive Compensation Plan

13.     January 21, 2005 Asset Purchase Agreement between Health Grades and FACCT

14.     January 24, 2005 Morrow to Prows etc. re Hours and response by Prows

15.     January 25, 2005 Prows email to Morrow re Offer Letter with attachment

16.     January 25-27, 2005 emails among Prows, Shanks & Morrow re license agreement for
        use of SAQ

17.     January 27, 2005 Employee Stock Option Grant to Prows

18.     January 28, 2005 emails between Morrow and Prows re CYC letter to FACCT friends

19.     January 28, 2005 Prows email to Morrow providing SAQ license agreement

20      February 1, 2005 Prows Employment Application

21      February 1, 2005 Prows email to Burkhard & Morrow attaching concept paper

22.     February 3-4, 2005 email string among Prows, Petty, Morrow and Burkhard

23.     February 3-4, 2005 email string among Prows, Petty and Morrow

24.     February 4, 2005 Morrow offer letter to Prows

25.     February 7, 2005 Employment at Will and Work for Hire Agreement

26.     February 7, 2005 Acknowledgment of receiving Health Grades Employee Handbook

27.     February 8-23, 2005 email string among Prows, Morrow, Burkhard & Dodge re NEED
        you to read this

28.     February 10, 2005 email string among CVOutcomes, Prows, Morrow & Shanks re
        CVOutcomes

29.     February 16, 2005 Prows email to Dodge re follow-up

30.     February 25, 2005 Accounting-CYC meeting agenda

31.    February 28, 2005 email from licenses@cvoutcomes.org to Meyers re Thank you for your License Request

32.    March 2, 2005 email from licenses@cvoutcomes.org to Meyers re Your License Request Has Been Approved

33.    March 2, 2005 License Agreement between Health Grades and Outcomes Instruments

34.    April 1, 2005 Incentive Compensation Plan

35.    April 4, 2005 email from licenses@cvoutcomes.org to Meyers re Your License Request Has Been Activated

36.    2005 Revenue chart re CYC-FACCT

Plaintiff/Counterdefendant requests that it be allowed to offer any exhibits necessary for rebuttal or impeachment.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 05-cv-00767-RPM-MEH

HEALTH GRADES, INC.,

    Plaintiff/Counterdefendant, a Delaware corporation doing business in Colorado,

v.

SUSAN L. PROWS;

    Defendant/Counterclaimant, a citizen and resident of the State of Oregon,

---

### EXHIBIT D:  DEFENDANT/COUNTERCLAIMANT'S EXHIBIT LIST

---

1. 8/1/03 Ltr from D. Lansky to Prows re reduction of work hours

2. Independent Contractor Agreement

3. August 2004 business plan for "Newcorp"

4. 11/12/04 Email from Prows to Morrow re: hi

5. 12/6/04 Emails Prows, Morrow, Meyers, Porter re Status

6. 12/9/04 and 12/10/04 Emails Prows, Morrow, Meyers, Porter re Top three initiatives

7. 12/14/04 Email from Prows to Morrow

8. 12/14/04 Email from Morrow to Prows re available to talk

9. 12/14/04 Email from John Morrow to Susan Prows

10. 12/16/04 Emails Prows, Morrow and Lemieux re permissions

11. 12/20/04 Email and attached Power Point presentation draft

12. 12/20/04 Letters to Klein, Lien, Lawrence, Campbell, Robinson, Kalin, Copeland, Skinner, Brown, Glascoe, Spertus from Prow re: IP transfer

13. 12/27/04 Email from Morrow to Meyers, Porter, Prows re update and Prows' response

14. 12/27/04 Emails from John Morrow to Susan Prows

15. 12/29/04 Email from John Morrow to Susan Prows confirming approval of employment

16. 12/30/04 Email from John Morrow to Susan Prows re SF-ACES

17. Employee Handbook Effective January 2005

18. 1/1/05 Draft HealthGrades Inc. CYC Incentive Compensation Plan

19. CYC Activity Report, January 1, 2005

20. 1/1/05 Email exchange between John Morrow and Susan Prows

21. 1/17/05 Emails Prows, Morrow re follow-up with CVOutcomes

22. 1/17/05 Emails from Susan Prows regarding CYC licensing and regarding job titles

23. 1/17/05 Email exchange between John Morrow and Susan Prows including inquiry regarding status of SAQ License

24. 1/18/05 Email from CVOutcomes to Prows

25. 1/18/05 Email from Stan Kaufman to Susan Prows re SAQ license request

26. 1/19/05 Email from J. Morrow to A. Dodge Fw: Seattle Angina Questionnaire draft contract with attached SAQ License Agreement

27. 1/19/05 Email exchange between Susan Prows and John Morrow re: SAQ license

28. 1/19/05 Email from Kaufman to Prows re license agreement

29. 1/24/05  Email from Morrow to Prows, Porter, Meyers re Hours and Prows' response

30. 1/24/05 Email from John Morrow to CYC team

31. 1/27/05 Email from Morrow to Prows, Shanks re license agreement for use of SAQ

32. 1/28/05 Emails between Prows and Shanks re SAQ license agreement

2

33. 1/28/05 Email exchange between John Morrow and Susan Prows regarding database/mailing list

34. 1/28/05 Email from Susan Prows to John Morrow regarding SAQ license agreement

35. 1/31/05 Email from Prows to Shapiro re more info you requested

36. 1/31/05 Email from Susan Prows to John Morrow and Scott Shapiro attaching CYC client database and other information

37. 2/1/05 Email Burkhard to Morrow from Prows w/draft concept & budgets & Timelines Phase I & II

38. 2/1/05 Employment application for Prows, w/attached resume

39. 2/2/05 Email Prows to Burkhard re equipment

40. 2/3/05 Email from Barbara Porter to John Morrow appending CYC activity report

41. 2/4/05 Email Prows to Morrow re income level, supplemental rate 2 pp. w/ 2/3/05 attached email

42. 2/4/05 Employment letter

43. 2/4/05 Email exchange between Susan Prows, Caroline Petty, and John Morrow regarding issue of titles and compensation

44. 2/4/05 Email from Prows to Burkhard re message from Morrow

45. 2/10/05  Email from Prows to Morrow, Shanks re FYI from CVOutcomes, with attached emails

46. 2/15/05 Emails from S. Prows to J. Burkhard re Invoice and CVOutcomes License Agreement

47. 2/15/05 Email to Burkhard from Prows

48. 2/16/05 Email from S. Prows to A. Dodge re follow-up

49. 2/16/05  Email Dodge from Prows

3

50. 2/23/05 Email to Dodge from Burkhard w/attached email

51. 2/25/05 Email from CVOutcomes to Prows

52. Agenda for February 25th, 2005 CYC Meeting

53. 2/25/05 Email between Kaufman and Prows regarding lack of signed license agreement

54. 2/25/05 Email from S. Kaufman to Prows re License Invoice and Agreement from Outcomes Instruments, LLC and Email from Prows

55. 2/27/04 Email from Morrow to Prows re Hospital CAHPSR Update, with attached 11/17/04 email

56. 2/27/05 Email from Allen Dodge to Susan Prows regarding termination of her employment

57. 3/2/05 Ltr. From J. Barlow to A. Dodge re request for employee information

58. 3/9/05 Ltr. From K. Kostelansky to J. Barlow re certified copies of records

59. 3/10/05 Ltr. From J. Barlow to K. Kostelansky re statute re Dodge letter

60. 3/18/05 Ltr. From K. Kostelanasky to J. Barlow re records enclosed

61. Documents reflecting Prows' efforts to transfer IP rights from FACCT to HealthGrades

62. Press Release regarding acquisition of CYC

63. "Top Ten Priorities" list sent by Prows at request of John Morrow

64. Contact list

65. CYC client list

66. Incentive Compensation Plan – 2005 Effective April 1, 2005

67. 2005-Revenue CYC-FACCT

68. HealthGrades 2005 Operational Budget

4

69. CYC tool Survey Items and Permission Status

70. Outcomes Instruments License Agreement

71. Chart re client, modules, launch date/price

72. Draft CVOutcomes License Agreement

73. Jane Lillydahl curriculum vitae and trial testimonies

74. Jane Lillydahl expert report and supplement

75. Forms W-2 and 1099 from FACCT to Prows for 2004

76. Summary of SAQ License Correspondence

77. Summary/Timeline of November and December 2004 work for Health Grades

78. Summary of Contact Regarding Commission

79. Exhibits necessary for refreshment recollection or impeachment

5